IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

MAXOR NATIONAL PHARMACY
SERVICES CORP., Individually and as
Stockholders' Representative of Certain
Stockholders of JustCare, Inc.

        Plaintiff,

v.

TULL N. GEARREALD, JR. & JAMES
REIN,

        Defendants.

NO. 2:11-CV-045-J

## MEMORANDUM OPINION AND ORDER

Before the Court is *Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(B)(1), 12(B)(2), 12(B)(6) and 23.1*, filed on May 9, 2011.

Defendants Gearreald and Rein are former Directors and stockholders of JustCare, Inc., a Delaware corporation, which owns and operates Columbia Regional Care Center. Gearreald was at one time the President and CEO of JustCare. In 2009, GEO Care Acquisition, Inc. made an offer to the JustCare Board of Directors to acquire the capital stock of JustCare. In May 2009, the Board voted to proceed with negotiations while also seeking inquiries from other companies.

The JustCare Board formed a Special Committee to handle these proposals. In July 2009, the Board received an offer from Brookstone Partners to acquire JustCare. The Special Committee evaluated the offers and recommended selling JustCare to GEO (the original offer). In August 2009, the JustCare Board unanimously approved the acquisition/Merger for $40 million. Both Defendants, as Board members, voted in favor of this action. The Board also

1

voted to submit the Merger proposal to JustCare stockholders. In August 2009, the Merger was executed subject to approval by the stockholders.

$6 million of the $40 million agreement was to be held in escrow for up to two years, at which point the amount remaining – after deduction of certain unknown potential claims – would be distributed to all stockholders who had voted in favor of the Merger. Immediately after the acquisition, stockholders who had voted in favor would receive $5.28 per share. Each stockholder would then receive up to $0.47 per share on the first and second anniversary of the Merger (totaling $6.22 per share) unless the escrow account had been reduced by certain unknown claims, in which case the stockholders would not receive the anticipated $6.22 per share.

In September 2009, the JustCare Board held a special meeting of stockholders in Dallas to conduct a formal vote. Stockholders were informed prior to the meeting date that the Board was recommending approval of the Merger. Defendants gave JustCare's Chief Financial Officer in Alabama their proxy votes directing that their shares be voted against the Merger. The stockholders approved the Merger, which was then closed and consideration paid. The stockholders who voted in favor of the Merger, including Plaintiff Maxor, received immediate payment of $5.28 per share. The remaining consideration ($0.94 per share, $6 million in total) was placed in the escrow account.

Under Delaware law, individual stockholders could refuse to accept the $6.22 per share as determined by the $40 million acquisition price and could instead ask a Delaware court to appraise the value of JustCare on the date of the Merger. If JustCare was determined to have a value higher than $40 million, the dissenting stockholders would then be entitled to a larger per-

share value. Based on the Merger Agreement, this value would be paid directly from the escrow account.

On January 27, 2010, Defendants and other stockholders filed a Verified Petition for Appraisal in Delaware state court. In that action, Defendants assert that the Merger was closed at an inadequate price.[1]

Plaintiff Maxor filed this suit claiming that Defendants Gearreald and Rein breached duties owed as Directors of JustCare to the stockholders by voting in favor of the Merger Agreement, including the consideration of $40 million, and by recommending to the stockholders that the Merger Agreement was advisable and should be approved when they intended to vote against the Merger and seek appraisal from the Delaware court.

Defendants filed a *Motion to Dismiss*. Defendants first contend that this Court does not have personal jurisdiction over them. Defendants next contend that Plaintiff is attempting to bring a derivative claim which it does not have standing to bring.

Because this Court finds personal jurisdiction to be lacking, it does not reach the issue of standing.

## **STANDARD**

When a foreign defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing this Court's jurisdiction. *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338 (5th Cir. 2002) (citation omitted), *cert. denied*, 540 U.S. 814 (2003). When ruling on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff may meet its burden by presenting prima facie evidence that jurisdiction is proper. *Id.* (citation omitted). This Court must accept the plaintiff's factual allegations as true

---

[1] Defendant Rein is no longer a party to the Delaware appraisal action.

and resolve all factual disputes in its favor. *Panda Brandywine Corp. v. Potomac Elec. Power*, 253 F.3d 865 (5th Cir. 2001) (citation omitted). When making a prima facie showing of jurisdiction, the plaintiff must provide affirmative proof based on facts in the record and may not rely solely on unsupported allegations. *B.J. Tidwell Industries, Inc. v. Zawacki*, 645 F.Supp.2d 7 (D.Me. 2009).

In a suit based in diversity, this Court may exercise personal jurisdiction over a foreign defendant if the Texas long-arm statute creates personal jurisdiction over the defendant and the exercise of such jurisdiction is consistent with constitutional due process. *Panda Brandywine Corp.*, 253 F.3d at 867.

The Texas long-arm statute permits jurisdiction over a nonresident defendant who does business in the state. *See, e.g.*, TEX. CIV. PRAC. & REM. CODE § 17.042. This provision has been interpreted to extend to the limits of constitutional due process. *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996).

The Due Process Clause "permits a court to exercise personal jurisdiction over a foreign defendant when (1) that defendant has purposefully availed himself to the benefits and protections of the forum state by establishing minimum contacts with the forum state and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010) (citation omitted). The first prong focuses on the defendant's actions and whether the defendant purposely availed himself of the benefits and protections of the forum state. *Applewhite v. Metro Aviation, Inc.*, 875 F.2d 491, 495 (5th Cir. 1989). Two types of 'minimum contacts' may constitute purposeful

availment sufficient to support jurisdiction: contacts giving rise to specific jurisdiction and contacts giving rise to general jurisdiction. *Id.* (citation omitted).

The second prong focuses on the interest of the state in providing a forum, the convenience (or inconvenience) of the parties, and basic fairness. *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026 (5th Cir. 1983) (citation omitted).

### General Jurisdiction

In order to support general jurisdiction, the Defendants' contacts with Texas must be continuous and systematic. *See Submersible Systems, Inc. v. Perforadora Central, S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001). This requires extensive contacts and is a difficult standard to meet. *Id.* Random and fortuitous contacts are not sufficient. *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 610 (5th Cir. 2008) (citation omitted). The Fifth Circuit has noted "just how difficult it is to establish general jurisdiction." *Id.*

The general jurisdiction analysis is fact-specific and is "determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Mississippi Interstate Exp., Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir. 1982).

### Defendant Gearreald

Defendant Gearreald founded JustCare in 1997 and served as President and CEO until the Merger in 2009. JustCare's only facility is in Columbia, South Carolina. JustCare's headquarters and Gearreald's office were in Montgomery, Alabama. Gearreald has been a

5

resident of Alabama for the last twenty years and has never resided in Texas. Gearreald has never been employed in Texas.

Gearreald's few contacts with Texas were largely undertaken in his capacity as an officer of JustCare and not alleged to be tortious. Gearreald met with Plaintiff Maxor's representatives in Texas in 1997 to discuss Plaintiff's initial purchase of JustCare stock and he later contacted Plaintiff regarding its interest in purchasing additional stock. He participated in one conference call while he was in Amarillo at Maxor CEO Jerry Hodge's invitation,[2] he participated in toll-free nationwide conference telephone Board meetings during which Board members participated from various states and Plaintiff Maxor participated from Texas, and he met with Plaintiff's representatives in Amarillo approximately four additional times over the course of their business relationship. Gearreald attended a meeting concerning his compensation in Dallas, and met with Plaintiff's representatives again in Dallas to discuss a salary increase.

Contacts initiated solely as a corporate officer of JustCare, and which were neither motivated by personal gain on Gearreald's behalf nor tortious, cannot be used to establish general personal jurisdiction. *See, e.g., Network Multifamily Sec. Corp. v. Homes for America, Inc., et al.*, 2011 WL 2412966 at *3 (N.D.Tex. 2011) ("an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has personal jurisdiction over the corporation.") (footnotes omitted); *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985).

In any event, these contacts, and Defendant Gearreald's remaining contacts, including the meeting in Texas to negotiate his salary and execute his employment contract, do not rise to the level of 'continuous and systematic' so as to support general jurisdiction. *See, e.g., Jackson v.*

---

[2] Gearreald and the other Directors participated by calling into a toll-free nationwide conference call number.

*Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010) ("General jurisdiction may be found when the defendant's contacts with the forum state are substantial, continuous, and systematic.") (citation omitted); *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 614 (5th Cir. 2008) ("mere travel, even at regular intervals into a state, does not create general jurisdiction"); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) ("the exchange of communications between Texas and Oklahoma in the course of developing and carrying out the contract was in itself also insufficient to constitute purposeful availment of the benefits and protections of Texas law").

### Defendant Rein

Defendant Rein became involved with JustCare in 1997 at the request of Gearreald. Rein served on the JustCare Board of Directors from 1997 until the Merger in 2009. Rein has resided in Alabama continuously for the past thirty years and has never resided in Texas or been employed in Texas. Rein does not own or lease property in Texas or maintain a place of business in Texas. Rein has two investment accounts managed in Austin and maintains a position on the Board of Directors of an energy company in Florida which has investments in several states, including Texas.

Rein participated in toll-free nationwide conference telephone Board meetings during which Plaintiff Maxor participated from Texas. He met once with the Compensation Committee in Dallas regarding Gearreald's contract. He sent correspondence to Plaintiff's representatives in Texas offering to sell shares of JustCare in 2009. He also assisted Brookstone with its offer to purchase Plaintiff's stock in JustCare.

These contacts are insufficient to establish general jurisdiction. The communications, telephone conferences, and one physical visit in over ten years do not qualify as 'continuous and systematic.' *See, e.g., Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010) (noting that "isolated visits to a forum" are insufficient to support general jurisdiction); *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602 (5th Cir. 2008); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) ("merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction").

### Specific Jurisdiction

Specific jurisdiction refers to contacts that are directly related to the litigation. In these contacts, there must be some act by which the defendant purposefully availed himself of the benefits of the forum state. *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331 (5th Cir. 1999) (quoting *Hanson v. Denckla*, 357 U.S. 235 (1958)). *See also, Clemens v. McNamee*, 615 F.3d 374, 379 (5th Cir. 2010) ("It is essential that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws."). The foundation of specific personal jurisdiction rests on the relationship between the defendant, the forum, and the litigation. *Id.* (quoting *Shaffer v. Heitner*, 433 U.S. 186 (1977)).

A central requirement of 'purposeful availment' is that the contact with the forum must be brought about by the defendant and not by some unilateral activity of another person. *Johnson v. Kindred*, 285 S.W.3d 895, 901 (Tex.App.– Dallas 2009). Merely entering into a contract with a resident of the forum is insufficient to establish personal jurisdiction. *T-M Vacuum Products, Inc. v. TAISC, Inc.*, 2008 WL 2078190 (S.D.Tex. 2008) (quotation omitted).

8

However, activities that are purposefully directed towards a forum that give rise to a cause of action may be sufficient to establish personal jurisdiction. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999).

Plaintiff alleges that tortious conduct of Defendants, directed toward Texas, establishes specific personal jurisdiction. Plaintiff contends that "Defendants' actions which form the basis of the cause of action asserted herein were their votes as Directors in favor of the Merger and their recommendations as Directors in the Proxy Statement that stockholders do the same, when in fact, Defendants believed that the merger price was inadequate." Plaintiff's Response at 16. Included within the Proxy Statement was a statement that the JustCare Board of Directors recommended a vote in favor of the Agreement and the Merger.

To find that a single contact with the forum will support jurisdiction, a court must first find such a contact to exist. *See, e.g., Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 585 (5th Cir. 2010). The vote as a Director in favor of the Merger by conference telephone call was not a contact with Texas that will support specific personal jurisdiction.

The conference telephone Board meetings, including the vote to approve the Merger, were not such contacts with Texas because they were conducted using a nationwide phone number and not specifically directed towards any forum. *See Guillory v. JK Harris & Co.*, 2007 WL 7239890 (S.D.Tex. 2007) (holding that phone calls did not give rise to specific jurisdiction where "all four of the telephone conferences were actually *nationwide* calls directed not at the state of Texas. . . and where the defendant "did not call any office in any particular state, nor did he contact any employee directly"). The fact that the Plaintiff was participating from Texas was a mere "fortuity." *See id.* (citing *Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773, 778 (5th Cir. 1986); *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974)).

Likewise, the preparation and distribution of the Proxy Statement were not acts of the Defendants purposefully directed towards Texas. The Proxy Statement was sent to every JustCare stockholder. Out of approximately 125 stockholders, Maxor was the only stockholder residing in Texas. Further, although a draft of the Proxy Statement was sent to Gearreald and Rein, neither prepared the Proxy Statement and neither mailed or otherwise distributed it. Gearreald made one objection about a disclosure that he believed should have been included. That objection was disregarded.

## CONCLUSION

Plaintiff has not established the facts necessary to support prima facie personal jurisdiction over the Defendants. Defendants' *Motion to Dismiss* is hereby GRANTED and all causes of action against Defendant Gearreald and Defendant Rein are hereby DISMISSED without prejudice.

It is SO ORDERED.

Signed this the 22nd day of July, 2011.

MARY LOU ROBINSON
UNITED STATES DISTRICT JUDGE